# Supreme Court of Texas

No. 24-0310

H-E-B, LP,
*Petitioner*,

v.

Marissa Peterson,
*Respondent*

On Petition for Review from the
Court of Appeals for the Thirteenth District of Texas

**Argued December 3, 2025**

JUSTICE BLAND delivered the opinion of the Court.

In this slip-and-fall premises liability case, the trial court granted summary judgment in favor of a grocer. The court of appeals reversed, concluding that knowledge of earlier roof leaks elsewhere in the grocery store created a fact issue as to the grocer's knowledge of a clear liquid puddle on an aisle floor. Following our precedent, we hold that a party responding to a no-evidence motion for summary judgment must adduce some evidence showing the duration an unreasonably dangerous condition existed to raise a fact issue as to whether the premises owner

had constructive notice of the condition at the time and place of the plaintiff's injury. The record in this case lacks such evidence. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's summary judgment for the grocer.

**I**

While shopping in the toy aisle at an HEB grocery store,[1] Marissa Peterson slipped on a clear liquid puddle and fell. She continued shopping and sought medical treatment the next day. She sued HEB for premises liability, alleging HEB (1) knew or should have known about the unreasonable risk of harm the puddle presented and (2) failed to adequately warn of the puddle or make the premises reasonably safe.

Peterson testified in her deposition that she fell, passed out, and awoke on the floor with pain in her knee and water around her. After she fell, Peterson noticed a puddle about six or seven inches wide and observed water dripping from a ceiling rafter above the puddle. She could not remember if there were tracks through the puddle, and she had "no idea" how long the puddle had been present before she fell. Her shopping companion, John Wayne, testified that he and Peterson arrived at the store within two or three minutes before Peterson fell. He was pushing a shopping cart to Peterson's left. He estimated the puddle was "probably two feet across." Wayne initially said he saw water dripping from above the toy aisle about every ten or fifteen seconds, but he later recanted, testifying: "I have no idea where the water came from[.] I assumed the water came from the ceiling but did not see it

---

[1] Consistent with the parties' briefing, we refer to H-E-B, LP, as HEB.

2

dripping as if from a leak." On his way to customer service to retrieve a store manager, Wayne recalled seeing "signs and little white trash cans and buckets up in several places" elsewhere in the store.

According to Peterson and Wayne, they mentioned the leak to the responding HEB manager. The manager observed a "small spot of water" on the floor, but he saw no leak or drip. He identified the source of the liquid as "rain" on the incident report because it had rained earlier in the day and no other source was apparent, like "a spilled cup or a bottle." The manager assumed the liquid came from a wet shopping cart, umbrella, or article of clothing. Because he did not observe evidence of a leak, he did not report one to be repaired.

HEB conducted heightened inspections during rainstorms. In the year before Peterson's fall, the HEB store had experienced numerous leaks stemming from a remodeling project. Records produced for work performed on the roof in the year before and the year after Peterson's fall show leak repairs throughout the two-year window. The records, however, do not reveal any reports of a leak above the toy aisle or corresponding roof repairs ahead of the incident. Nor is there such a report after the date of the incident.

After the trial court granted HEB's motion to exclude a report and testimony from Peterson's expert, HEB moved for traditional and no-evidence summary judgment.[2] HEB argued that no evidence demonstrated its actual or constructive knowledge of a dangerous

---

[2] The court of appeals reversed and remanded this case once before. *Peterson v. HEB Grocery Co.*, No. 04-19-00688-CV, 2020 WL 1931628, at *1, *4 (Tex. App.—San Antonio Apr. 22, 2020, pet. denied).

condition causing Peterson's injuries. In particular, it argued, it had no knowledge of the puddle on the toy aisle, and no evidence shows when the puddle formed. HEB attached deposition testimony from Peterson, Wayne, the responding store manager, and a corporate representative of the property owner's management company. HEB also included the roof repair records.[3]

In her summary judgment response, Peterson did not dispute HEB's lack of actual knowledge of the puddle. She instead argued that a fact dispute existed as to whether HEB should have known of the puddle, including whether a leak above the aisle had created the puddle. Peterson attached the incident report identifying "rain" as the puddle's source and video footage showing that the rain had stopped two hours before the incident. Footage of walkways at the front and back of the toy aisle indicates no HEB employee had walked down the aisle in the two hours before Peterson's fall. Peterson also attached deposition testimony from a second representative of the store's property owner, who testified that the store's roof leaked "every time it rain[ed]" because of the renovation project. The leaks, he said, were concentrated in the southern portion of the store, not near the toy aisle. Peterson further relied on the HEB manager's testimony about the store's heightened inspection protocol and her observation of water dripping from the rafter above the puddle contemporaneously with her fall.

---

[3] HEB's summary judgment reply brief included an expert report. We do not consider this evidence because the trial court sustained Peterson's objection to the reply as untimely; HEB did not appeal this ruling.

The trial court granted summary judgment for HEB. The court of appeals reversed, concluding that earlier roof leaks in the store need not be in the area of a puddle to support a finding of constructive knowledge of that puddle.[4] The court further held that the trial court partially erred in excluding deposition testimony from Peterson's expert that HEB had failed to adequately maintain the premises, contain the leak, and inspect the floor.[5] In this Court, HEB challenges both rulings.[6]

## II

We review a summary judgment ruling de novo.[7] A party may move for summary judgment on traditional and no-evidence grounds in a single motion.[8] A movant seeking a no-evidence summary judgment must show that, after an adequate time for discovery, no evidence exists of an essential element of a claim on which the adverse party has the

---

[4] 719 S.W.3d 368, 387–88 (Tex. App.—Corpus Christi–Edinburg 2024).

[5] *Id.* at 381–82. The expert's report included a drip experiment he performed. *Id.* The court of appeals affirmed the trial court's exclusion of this drip experiment as unreliable. *Id.* at 379. Peterson does not seek review of this ruling in our Court.

[6] We do not address HEB's challenge to the court of appeals' reinstatement of some of Peterson's expert testimony because the testimony does not adduce facts showing the length of time the puddle existed on the floor before Peterson fell.

[7] *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022).

[8] *Binur v. Jacobo*, 135 S.W.3d 646, 650 (Tex. 2004); Tex. R. Civ. P. 166a(b)(1). Rule 166a's recent amendments do not apply to summary judgment motions filed before March 1, 2026. HEB's motion proceeded under the pre-amendment rule. The revisions to Rule 166a (apart from deadline changes) are "not intended to substantively change the law." Tex. R. Civ. P. 166a cmt. Thus, courts should carry forward substantive caselaw preceding the amendments unless superseded by the new deadlines.

burden of proof at trial.[9] We view evidence "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion."[10]

To prevail on a premises liability claim, an injured invitee must show: (1) the property owner (or occupier) had actual or constructive knowledge of a condition of the premises over which it exercises control; (2) the condition was unreasonably dangerous; (3) the owner failed to exercise reasonable care to reduce or eliminate the risk of harm; and (4) such failure proximately caused the alleged injury.[11] In this appeal, the only element at issue is whether HEB, as the occupier of the premises, possessed constructive knowledge of the puddle.

HEB contends the court of appeals erred in relying on evidence of roof leaks outside the vicinity of the toy aisle to establish that HEB had constructive knowledge of the puddle that caused Peterson to slip and fall. HEB asserts that no evidence establishes the length of time the puddle was present on the floor before Peterson fell, an essential element of a constructive knowledge case. Peterson counters that numerous earlier leaks outside the vicinity of the toy aisle support a constructive-knowledge finding. Even without such evidence, she further argues, she presented other evidence sufficient to raise a fact

---

[9] *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009).

[10] *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

[11] *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992); *see United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471, 473 (Tex. 2017) (explaining that the duty owed by property owners in premises liability cases may extend to occupiers of the premises).

issue, including testimony about the puddle's size and her observation of water dripping from above it. Peterson also relies on evidence that no HEB employee had inspected the aisle in the two hours between the cessation of rain and her fall.

Because Peterson concedes no evidence supports a finding that HEB knew about the puddle before she fell, she must adduce some evidence of HEB's constructive knowledge of the puddle; that is, evidence that "it is more likely than not that the condition existed long enough to give the premises owner a reasonable opportunity to discover it."[12] Whether a premises owner can be charged with constructive knowledge turns on the longevity of the dangerous condition, the owner's—or its agent's—proximity to the condition, and the condition's conspicuity.[13]

## A

As an initial matter, evidence of the earlier roof leaks outside the vicinity of the toy aisle does not raise a fact issue as to constructive knowledge of the puddle. In *City of San Antonio v. Rodriguez*,[14] we reversed a jury verdict imposing premises liability against the City after the plaintiff slipped on a wet floor.[15] The plaintiff had adduced evidence

---

[12] *Wal-Mart Stores, Inc. v. Reece*, 81 S.W.3d 812, 814 (Tex. 2002); *see also CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 102 (Tex. 2000) ("Constructive knowledge is a substitute in the law for actual knowledge.").

[13] *Wal-Mart Stores, Inc. v. Spates*, 186 S.W.3d 566, 567–68 (Tex. 2006) (citing *Reece*, 81 S.W.3d at 816).

[14] 931 S.W.2d 535 (Tex. 1996).

[15] *Id.* at 536–37.

of earlier roof leaks in an attempt to prove constructive knowledge of the water on the floor at the time the plaintiff slipped.[16] Our Court held, "[t]he leaky roof was not itself a dangerous condition; it could only cause a dangerous condition."[17] Whether such evidence could support a finding of constructive knowledge "[d]epend[ed] on the position of the leaks above the floor and the amount of rain."[18] To support a constructive knowledge finding, a roof leak must be in the vicinity of the liquid on the floor.

Even with knowledge of a leak, that notice must correlate to the alleged dangerous condition. The knowledge inquiry—whether actual or constructive—concerns knowledge of the dangerous condition "at the time and place injury occurs, not some antecedent situation that produced the condition."[19] In concluding that earlier roof leaks were some evidence that HEB should have known of the puddle that caused Peterson's injuries, the court of appeals in this case removed the time and place element in error. The buckets, trash cans, and signs Wayne observed on the day of Peterson's fall were not located in the toy aisle. Peterson concedes that no records show a leak in the vicinity of the toy aisle in the year before Peterson's fall. Though roof repair records may support other elements of a premises liability claim, older, repaired leaks at other locations in the store are not probative of HEB's

---

[16] *Id.*

[17] *Id.* at 536.

[18] *Id.* at 537.

[19] *Albertsons, LLC v. Mohammadi*, 689 S.W.3d 313, 318 (Tex. 2024) (quoting *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 407 (Tex. 2006)).

8

constructive knowledge of a puddle on the toy aisle floor "at the time and place injury occur[red]."[20]

## B

Peterson points to evidence she claims raises a fact issue as to constructive knowledge even without the evidence of leaks in other locations. None, however, tends to prove the duration of the puddle's existence on the floor. Absent temporal evidence of the duration the danger existed, the law does not charge a premises owner with constructive notice.[21] "[F]irmly rooted in our jurisprudence," the time–notice rule exists because a factfinder cannot assess whether an owner had an opportunity to discover a dangerous condition without some temporal evidence indicating the condition existed long enough for a reasonable owner to have discovered it.[22] Thus, in *Brookshire Brothers, Ltd. v. Aldridge*,[23] video footage showing employees repeatedly passing a large grease spill within the five minutes before the plaintiff slipped was some evidence of constructive knowledge.[24] Evidence does not

---

[20] *Id.*

[21] *Reece*, 81 S.W.3d at 815–17 (holding that a plaintiff presented no evidence of a premises owner's constructive knowledge of water she slipped on because no evidence indicated how long the water had been on the floor).

[22] *Id.* at 816.

[23] 438 S.W.3d 9 (Tex. 2014).

[24] *Id.* at 30.

satisfy the rule if, in contrast, it says nothing about whether a condition accumulated over a prolonged period rather than recently arose.[25]

Peterson points to the evidence that the rain ended two hours before her fall. Rain speaks to a possible cause of the condition, but not to the condition itself or when it arose inside the store.[26] A drip from a rafter similarly addresses a cause; it says nothing about when the drip created the puddle or the puddle's duration on the floor before Peterson slipped.[27] The size of the puddle, without more, also does not allow a jury to infer duration.[28] Because the evidence supports only the possibility that the puddle existed "long enough,"[29] a factfinder cannot assess whether HEB reasonably could have discovered it.[30]

---

[25] *See Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936–37 (Tex. 1998) (discussing evidence that courts have held insufficient to satisfy the time–notice rule); *see also Reece*, 81 S.W.3d at 815–17 (same). Evidence of cart tracks, footprints, or dirt in a dangerous condition does not suffice. *Gonzalez*, 968 S.W.2d at 936–38 (holding that evidence of tracks through macaroni salad and testimony that it "seemed like it had been there awhile" and had "a lot of dirt" was no evidence of constructive knowledge).

[26] *Mohammadi*, 689 S.W.3d at 318; *see also Rodriguez*, 931 S.W.2d at 536–37 (concluding that a "leaky roof was not itself a dangerous condition").

[27] *See Gonzalez*, 968 S.W.2d at 937–38 ("[M]eager circumstantial evidence from which equally plausible but opposite inferences may be drawn is speculative and thus legally insufficient to support a finding.").

[28] *See id.*

[29] *Id.* at 936, 938.

[30] *Reece*, 81 S.W.3d at 815.

Finally, Peterson points to HEB's inspection protocol during rainstorms.[31] Nothing about the protocol, however, indicates the duration of time the puddle existed before Peterson fell.[32] "An employee's proximity to a hazard, with no evidence indicating how long the hazard was there" does not show a premises owner's constructive knowledge of the hazard.[33] No evidence suggests an HEB employee neared the puddle before the accident.

Proving constructive knowledge of transient dangerous conditions like water puddles is difficult.[34] Our Court repeatedly has rejected calls "for a relaxed burden of proof in slip-and-fall cases when the evidence is scant."[35] Because the evidence in this case demonstrates "only the possibility" that the puddle existed long enough to charge HEB

---

[31] A premises owner's internal policy does not subject it to a higher standard of care. *CMH Homes*, 15 S.W.3d at 101 ("The duty owed by an owner or occupier of premises to an invitee is not that of an insurer."); *see also Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203–04 (Tex. 2015) ("[A] defendant has 'no duty' to take safety measures beyond those that an ordinary, reasonable landowner would take.").

[32] *See Reece*, 81 S.W.3d at 817 (reasoning that a store policy requiring employees to keep assigned areas free of hazards and intervene if they discovered hazards is "immaterial to the constructive-notice issue").

[33] *Id.* at 816.

[34] *See Gonzalez*, 968 S.W.2d at 936–37 (collecting cases involving transient conditions where plaintiffs were unable to adduce sufficient temporal evidence).

[35] *Id.*; *see also Reece*, 81 S.W.3d at 816 (noting that the Court has declined to limit the temporal element in the constructive knowledge inquiry (citing *CMH Homes*, 15 S.W.3d at 102–03)).

with notice of it,[36] we hold that the court of appeals erred in reversing the trial court's summary judgment for HEB.

*    *    *

Constructive knowledge of a dangerous condition requires evidence that the condition existed for a sufficient duration before the time and place of the injury for a premises owner to have discovered it. This record contains no evidence of how long the puddle existed before Peterson slipped on it; thus, the court of appeals erred in reversing summary judgment for HEB. Accordingly, we reverse the court of appeals' judgment and reinstate the trial court's summary judgment.

Jane N. Bland
Justice

**OPINION DELIVERED:** April 10, 2026

---

[36] *Gonzalez*, 968 S.W.2d at 936.

12